# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CONSTANCE HUDSPETH,**

      **Plaintiff,**

**v.**                                                        **Case No:   6:16-cv-1960-Orl-41KRS**

**GOVERNMENT EMPLOYEES**
**INSURANCE COMPANY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **PLAINTIFF'S MOTION TO REMAND (Doc. No. 11)**
>
> **FILED:**       **November 21, 2016**

### I.     PROCEDURAL BACKGROUND.

      On October 7, 2016, Plaintiff, Constance Hudspeth, filed a complaint against Defendant, Government Employees Insurance Company ("GEICO"), in the Eighteenth Judicial Circuit, in and for Seminole County, Florida. Doc. No. 2. Hudspeth's complaint arises from an accident that occurred on or about October 12, 2015, when Hudspeth was injured by an automobile being driven by Patricia Reaves. *Id.* ¶ 3. In Count I of the complaint, Hudspeth raises an underinsured motorist ("UM") insurance claim, alleging that GEICO breached the automobile insurance policy it issued to her by failing to pay UM benefits for injuries sustained in the accident. *Id.* ¶¶ 7-14. In Count II, Hudspeth raises a bad faith failure-to-settle claim, alleging that GEICO did not make a good faith

attempt to settle her claim for UM benefits, in violation of Fla. Stat. § 624.155. *Id.* ¶¶ 15-28.[1] Hudspeth attached to her complaint a copy of her insurance policy (Doc. No. 2-1) and the Civil Remedy Notice she sent to GEICO prior to filing suit (Doc. No. 2-2). GEICO was served with the complaint on October 18, 2016. Doc. No. 1 ¶ 2.

On November 8, 2016, GEICO timely removed the action to this Court, alleging that removal was appropriate on the basis of diversity jurisdiction because there was complete diversity of citizenship and the amount in controversy exceeded $75,000.00. Doc. No. 1. With its Notice of Removal, GEICO filed a copy of the state court documents, including the complaint and its attachments. Doc. No. 1-2. It also filed a copy of the declarations page from Hudspeth's insurance policy (Doc. No. 1-3) and an affidavit from a GEICO claims manager averring that the declarations page is true and accurate (Doc. No. 1-4).

Hudspeth filed a motion to remand on November 21, 2016. Doc. No. 11. In her motion, Hudspeth asks that the Court remand this action because GEICO has not met its burden of establishing that the amount in controversy exceeds $75,000.00. With her motion, Hudspeth filed copies of documents that she alleges show that her medical bills currently total approximately $40,465.32. Doc. No. 11-1.

GEICO filed its response on December 5, 2016. Doc. No. 17. With its response, GEICO filed a copy of two settlement demand letters from Hudspeth's counsel to GEICO—one offering to settle the case for the policy limits of $400,000.00 (Doc. No. 17-1) and another offering to settle the case for $125,000.00 (Doc. No. 17-2).

Hudspeth's motion to remand has been referred to me for issuance of a report and recommendation. It is now ripe for review.

---

[1] GEICO has since moved to dismiss Count II of the complaint. Doc. No. 3.

**II.   RELEVANT FACTS.**

   *A. Relevant Facts as Alleged in the Complaint and Exhibits Thereto.*[2]

Hudspeth and GEICO were parties to an automobile insurance contract.  Doc. No. 2 ¶ 9; Doc. No. 2-1.  The relevant insurance policy provided $100,000.00 in "stacked" UM coverage; because four cars were covered under the policy, it provided for a total of $400,000.00 in UM coverage.  Doc. No. 2-1, at 6, 44-47[3]; *see also* Doc. No. 11, at 1 (admitting that Plaintiff had $100,000.00 in "stacked" UM coverage, for a total of $400,000.00 in UM coverage).  On October 12, 2015, underinsured motorist Patricia Reaves backed into a parking space at a Walmart.  Doc. No. 2 ¶ 3.  Hudspeth alleges that Reaves so carelessly and negligently operated, maintained, and controlled her vehicle so as to collide with Hudspeth as she was on her wheelchair lift entering her vehicle.  *Id.* ¶ 4.  Hudspeth alleges that, as a direct and proximate result of Reaves's negligence, she "suffered bodily injury including an exacerbation of pre-existing injuries or activation of a pre-existing condition, all with resultant pain and suffering, disability, disfigurement, loss of earnings, mental anguish, loss of capacity for the enjoyment of life, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment."  *Id.* ¶ 5.  Hudspeth alleges that these issues are either permanent or continuing and that she will suffer these losses in the future.  *Id.* ¶ 6.

In her claim for UM benefits, Hudspeth alleges that she has requested the benefits to which she is entitled under the UM portion of her policy, but GEICO has failed to pay those benefits.  *Id.* ¶¶ 11, 14.  With this count, Hudspeth requests that the Court enter judgment against GEICO "for

---

[2] Under Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is attached to a pleading is a part of the pleading for all purposes.

[3] Page references to this document are to the page numbers assigned by CM-ECF when the document was filed, not to the page numbers in the original document.

the full amount of the uninsured motorist benefits, including pre-and post-judgment interest, attorneys' fees . . . , costs, and any other relief this Court deems proper, and further demands a trial by jury on all issues so triable."  *Id.* at 3.

In her bad faith claim, Hudspeth alleges that GEICO has failed to attempt to settle her UM claim in good faith.  *Id.* ¶ 21.  She asks that the Court enter a judgment against GEICO for the total amount of damages she suffered as a result of the accident, including pre- and post-judgment interest, attorneys' fees, and costs.  *Id.* at 7-8.

> *B. Allegations from Plaintiff's Motion to Remand, Defendant's Response, and Exhibits Thereto.*

Prior to filing suit, Hudspeth's attorney sent GEICO two letters making settlement offers. On December 14, 2015, she stated that Hudspeth was willing to settle her UM claim for the amount of her policy limits.  Doc. No. 17-1, at 2.  On September 22, 2016, she offered to settle Hudspeth's claim for $125,000.00.  Doc. No. 17-2, at 2.  The attorney attached copies of Hudspeth's medical bills to the letter and asserted that Hudspeth's medical bills totaled $40,465.32.  *Id.*[4]  The letter also stated that Hudspeth struggles with simple tasks—such as putting on her socks and shoes—and has been forced to sleep in a hospital bed in the living room because of sharp shooting pains in her neck.  *Id.* at 1. It also says that, "as a professor, [Hudspeth] is unable to grade papers and conduct research for more than an hour at a time due to her constant neck pain."  *Id.*

### III. APPLICABLE LAW.

Removal jurisdiction exists only where the district court would have original jurisdiction over the action.  28 U.S.C. § 1441(a); *Darden v. Ford Consumer Fin. Co., Inc.*, 200 F.3d 753, 755 (11th Cir. 2000).  Pursuant to 28 U.S.C. § 1332(a), district courts have original jurisdiction over

---

[4] With her motion to remand, Hudspeth also submitted copies of medical bills and argued that her medical bills currently total $40,465.32.  Doc. No. 11, at 4; Doc. No. 11-1.

cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Because GEICO is seeking to remove this case to federal court, it bears the burden of proving that federal court jurisdiction exists. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)) ("A removing defendant bears the burden of proving proper federal jurisdiction.").

In cases in which a plaintiff has not pleaded a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy "can more likely than not be satisfied." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001) (citation omitted); *Williams*, 269 F.3d at 1319 (citations omitted).[5] In such cases, removal is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. *Williams*, 269 F.3d at 1319. If the jurisdictional amount is not facially apparent from the complaint, the district court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed. *Id.*

If the removal petition is brought under the first paragraph of 28 U.S.C. § 1446(b) – that is, within thirty (30) days of the defendant being served with the state court complaint – as it is here, "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may

---

[5] Hudspeth cites *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213-15 (11th Cir. 2007), for the proposition that the evidence must be "clear and unambiguous." Doc. No. 11, at 3. It is unclear if Hudspeth means to suggest that GEICO bears some burden beyond the preponderance-of-the-evidence standard, but—to the extent she does—she is incorrect. *Lowery* included some language that suggested that the evidence supporting removal must be "unambiguous" and "clearly establish[]" federal jurisdiction. *See, e.g.*, 484 F.3d at 1213 n. 63. To the extent *Lowery* purported to apply that language to removals under 28 U.S.C. § 1446(b)(1), like this case (that is, removals which are filed on the basis of the complaint itself), as opposed to removals under § 1446(b)(3) [at the time, § 1446(b)(2)] (that is, cases that are not initially removable but become so based on the receipt of "other paper" from which it may first be ascertained that the case is one that has become removable), the Eleventh Circuit clarified in *Pretka, v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762-63 (11th Cir. 2010), that such statements were *dicta* that did not have persuasive value.

be used to satisfy the preponderance of evidence standard," and "[d]efendants may introduce their own affidavits, declarations . . ." or "other summary judgment type evidence that may reveal that the amount in controversy is satisfied." *Pretka*, 608 F.3d at 754-55 (internal quotations and citations omitted); *see also Williams*, 269 F.3d at 1319; *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (internal citations omitted). District courts may consider evidence filed after the notice of removal in assessing removal jurisdiction, so long as the subsequently filed evidence is relevant to the state of affairs at the time of removal. *Sierminski*, 216 F.3d at 949 (citing *Allen v. R&H Oil Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). A defendant may obtain removal of a case to federal court by relying on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754. However, removal statutes are strictly construed, and the Eleventh Circuit has made it clear that any doubts about jurisdiction should be resolved in favor of remand. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

**IV.   ANALYSIS.**

    *A. Diversity of Citizenship.*

GEICO's Notice of Removal alleges that it is a citizen of Maryland for diversity purposes because it is incorporated and has its principal place of business in Maryland. Doc. No. 1, at 2. GEICO also alleges that Hudspeth is a citizen of Florida for diversity jurisdiction purposes. *Id.* Hudspeth has not contested those allegations in her motion to remand. Therefore, it appears to be undisputed that complete diversity of citizenship exists in this case.

    *B. Amount in Controversy.*

Hudspeth's complaint does not demand a specific amount of monetary relief, instead only stating that "[t]his is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest where applicable and costs." Doc. No. 2 ¶ 1. Accordingly, GEICO must establish, by a preponderance of the evidence, that the amount in controversy in this case more likely than not exceeds $75,000.00. *See Pretka*, 608 F.3d at 748, 752 (interpreting complaint that stated it was an action for monetary damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees, as pleading an indeterminate amount of damages and applying preponderance of evidence standard); *Kirkland*, 243 F.3d at 1281 n.5; *Williams*, 269 F.3d at 1319. In determining whether it is facially apparent that the amount in controversy exceeds $75,000.00, the Court may make "reasonable deductions, reasonable inference, or other reasonable extrapolations" from the pleadings. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (quoting *Pretka*, 608 F.3d at 754).

Here, GEICO argues that the case is removable because Hudspeth's complaint and the attached insurance policy establish that the amount in controversy requirement is satisfied. Specifically, GEICO points to the following: (1) the $400,000.00 in UM coverage available under Hudspeth's insurance policy (Doc. No. 2-1, at 6, 44-47); (2) Hudspeth's allegations of serious and ongoing injuries, which have resulted in medical bills, pain and suffering, loss of earnings, and mental anguish, among other things (Doc. No. 2 ¶¶ 5-6); and (3) Hudspeth's allegation in Count I of her complaint that she requests judgment "for the full amount of the uninsured motorist benefits" (Doc. No. 2, at 3). GEICO also argues that this conclusion is supported by Hudspeth's pre-litigation settlement offers of $400,000.00 and $125,000.000, respectively. Doc. Nos. 17-1, 17-2.

I recommend that the Court find that GEICO has carried its burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00 based on Count

I of the complaint alone.[6] The Eleventh Circuit has instructed that a case is properly removable if it is facially apparent from the complaint that the amount in controversy exceeds $75,000.00. *Williams*, 269 F.3d at 1319; *Pretka*, 608 F.3d at 754 (citation omitted). Here, Hudspeth has alleged serious and ongoing injuries and damages, and Count I of Hudspeth's complaint clearly demands judgment "for the full amount of the uninsured motorist benefits"—that is, $400,000.00. Doc. No. 2 at 3. Thus, it is facially apparent that the amount in controversy exceeds $75,000.00, and the case is removable. *See Gilbert v. State Farm Mut. Auto. Ins. Co.*, 95 F. Supp. 3d 1358, 1362 (M.D. Fla. 2015) (finding amount in controversy satisfied by UM claim alone where plaintiff demanded judgment for "the full amount of the uninsured motorist benefits under the Policy" and alleged serious injuries and UM policy limits of $100,000.00).

Although it is not necessary to look beyond the complaint to find that the amount in controversy is satisfied, Hudspeth's settlement demands also support a reasonable inference that the amount in controversy exceeds $75,000.00. As noted above, Hudspeth has twice demanded more than $75,000.00 to settle her case. Doc. Nos. 17-1, 17-2. In the most recent demand, her attorney detailed $40,465.32 in medical bills to date. She also detailed injuries that continue to cause Hudspeth pain and apparently impact her ability to work. Doc. No. 17-2. Because the settlement demands did not place dollar figures on Hudspeth's future medical bills, pain and suffering, or loss of income, they are likely not the type of detailed demands that might support removal on their own. *See, e.g.*, *Middleton v. State Farm Mut. Auto. Ins. Co.*, No. 3:11-cv-1052-J-37JBT, 2012 WL 230025, at *1, 3 (M.D. Fla. Jan. 25, 2010). However, even if the settlement demands would not support removal on their own, the Eleventh Circuit has instructed that settlement offers "count for

---

[6] Because Hudspeth's bad faith claim has not yet accrued, it likely does not add anything to the amount in controversy. *See Marquez v. State Farm Auto. Ins. Co.*, No. 6:14-cv-241-Orl-36KRS, 2014 WL 2968452, at *1-3 (M.D. Fla. June 30, 2014).

something" when assessing the amount in controversy. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994).[7] And here, Hudspeth's settlement demands at the very least reinforce the conclusion that the amount in controversy exceeds $75,000.00.

Hudspeth's arguments in favor of remand are not persuasive. Essentially, Hudspeth seeks to ignore her clear demand for the UM policy limits (i.e. $400,000.00).[8] Instead, she focuses on the medical bills she has incurred to date, which she alleges to be $40,465.32: "Here, Plaintiff alleged she is entitled to all benefits owed to her under her policy. Plaintiff's current medical bills that she would be able to board in a jury trial (if it occurred today), totals approximately $40,465.32. While Plaintiff's case is potentially worth greater than then $75,000 (or even potentially greater than $400,000), to assume so based solely by evidence in the Complaint would require the Court to speculate." Doc. No. 11, at 4.

This argument makes at least two fundamental errors. First, it fails to recognize that a case can be removable if it is facially apparent from the complaint that the amount in controversy exceeds $75,000.00. *See Williams*, 269 F.3d at 1319. When that is the case—as is true here—a defendant need not submit additional evidence of the amount in controversy. The failure to look beyond the complaint does not require the Court to "speculate," it simply holds a plaintiff to what she has clearly

---

[7] It is also worth noting that Hudspeth has failed to stipulate that she is seeking less than $75,000.00 in this case. To the contrary, Hudspeth's motion to remand claims that "Plaintiff's case is potentially worth greater than $75,000 (or even potentially greater than $400,000)." Doc. No. 11, at 4. Because the amount in controversy requirement focuses the Court on the amount that has been placed *in controversy* by the litigation, not the amount that a plaintiff can actually prove to a jury, *see Pretka*, 608 F.3d at 751, this statement comes close to an admission that the amount in controversy *does* exceed the jurisdictional amount.

[8] Hudspeth's only acknowledgement of the demand is the following statement, "By requesting all benefits Ms. Hudspeth is entitled to under her policy she is properly pleading her claim, not specifying the value of the case." Doc. No. 11, at 4. Hudspeth cites no authority to support this counter-intuitive claim. Indeed, Hudspeth's complaint stands in marked contrast to the one UM case she cites in her motion, *Green v. Travelers Indem. Co.*, 3:11-cv-922-J-37TEM, 2011 WL 4947499 (M.D. Fla. Oct. 18, 2011). In that case, the complaint demanded "damages, costs of this action [and] any pre-judgment interest," Doc. No. 2. It did not demand the full policy limits, as does Hudspeth's complaint.

alleged in her complaint. Second, in addition to ignoring medical bills she will incur prior to trial and her claims for pain and suffering and lost wages, Hudspeth's argument seems to assume that the amount in controversy is determined by the amount of damages she can prove to a jury. The amount in controversy is not, however, determined by a plaintiff's likelihood of success, but rather how much she has put at issue in the case: "[T]he [plaintiff's] likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the [plaintiff is] ultimately likely to recover." *Pretka*, 608 F.3d at 751 (quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)); *see also Ailin v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1183-Orl-41DAB, 2014 WL 7734262, at *1 (M.D. Fla. Jan. 30, 2014) (citation omitted) ("In determining the amount in controversy, the relevant question is whether the plaintiff seeks damages in excess of the jurisdictional limit, not whether plaintiff will actually recover sufficient damages."). Here—regardless of what she might recover if this case goes to trial—Hudspeth has demanded at least $400,000.00 in damages (her UM policy limits). Thus, the amount in controversy exceeds $75,000.00, and GEICO properly removed the case.

## V.   RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Plaintiff's Motion to Remand (Doc. No. 11).

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 27, 2016.

   *Karla R. Spaulding*
   KARLA R. SPAULDING
   UNITED STATES MAGISTRATE JUDGE